IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAWN R.,[1]

      Plaintiff,

v.                                                                                           Civ. No. 22-478 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") relied on stale state-agency opinions and failed to meaningfully confront all the evidence undermining those opinions. The Court agrees that the ALJ failed to accurately consider the duration of Plaintiff's mental impairments. The ALJ's conclusion that all of Plaintiff's mental impairments resolved before her amended onset date is belied by subsequent evidence. As a result, the Court GRANTS Plaintiff's Motion For Summary Judgment (Doc. 18) and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 5, 6, 11. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

  A.  Disability determination process

  An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

  (1)  At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

  (2)  At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

  (3)  At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

  (4)  If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. <u>Standard of review</u>

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

Plaintiff challenges the ALJ's conclusions that (1) Plaintiff has no severe mental impairments; and (2) Plaintiff does not medically require an assistive device for standing and walking. The Court agrees with Plaintiff that the ALJ insufficiently discussed the evidence contradicting the assertion that Plaintiff had no severe mental impairments postdating her amended onset date. Therefore, the Court does not reach Plaintiff's second argument.

A.  Severe mental impairments

In a social security case, an ALJ "must evaluate the effect of a claimant's mental impairments on her ability to work." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). At step two of the Commissioner's five-step analysis, this requires the ALJ "to determine whether the mental impairment is 'severe' or 'not severe.'" *Id.* To be "severe," an impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). While step two requires only "a 'de minimis' showing of impairment, . . . . the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "[T]he regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Wells*, 727 F.3d at 1064; *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC").

At step two, the ALJ found that Plaintiff's medically determinable mental impairments of attention deficit disorder, anxiety, and depression are nonsevere. AR 18. Because Plaintiff challenges the ALJ's consideration of the evidence, the Court will quote the ALJ's step-two explanation in full:

A review of the evidence shows that claimant has reported being treated at Peak Behavioral Health from June 10, 2018 through June 25, 2018 for bipolar disorder with depression, general anxiety disorder and attention deficit disorder. Her chief complaint was "I need some help." Her depression was exacerbated by the loss of her husband and her father. She had periods of expansive mood and had been diagnosed with bipolar disorder and had a history of multiple issues with surgeries on the meniscus of the left knee, surgery on the left hand, fractured back, ablation, diabetes mellitus, supraventricular tachycardia (SVT) and hypertension (Exhibit B27F, page 2). The claimant was treated with her medications from home that included oxycodone, Norco, Strattera, Humalog, and meloxicam. She was also continued a course of Wellbutrin XL 150mg daily, Neurontin 600mg three times daily, Lithium carbonate 300mg twice daily and 600mg at bedtime, and Ativan 1mg three times daily. She did relatively well on this regimen. Her mood stabilized and there were no further suicidal or homicidal ideation. She stated that she felt she needed further therapy and was going to follow up with the partial program. She participated in ongoing therapies. Nonmedication therapy included group, milieu and one to one. She was felt capable of managing her own affairs and medical follow up. The claimant was discharged on June 25, 2018 with diagnoses of bipolar disorder type 2, depressed, moderate without psychotic features, generalized anxiety disorder, and attention deficit disorder as well as her physical medical conditions. She was to continue her home medications and continue Wellbutrin, Neurontin, lithium carbonate and Ativan (Exhibit B27F, pages 2-4).

On June 27, 2018, the claimant presented to the Hospitals of Providence with lethargy and altered speech. She reported being at Peak for depression for three weeks and recently discharged on June 25, 2018. She reported feeling suicidal. She was transferred back to Peak for further care (Exhibit B8F).

Records dated August 3, 2018 show the claimant was seen at Mountain View Orthopedics and was noted as alert and oriented to time, place, and person. Her mood and affect were normal. She was active and alert (Exhibit B10F).

At the reconsideration determination level, the claimant did not allege any new or worsening mental symptoms. New mental treatment sources were identified at reconsideration level; however, there was no medical evidence of record received from the source listed. A review of the current records finds no evidence of functional limitations beyond that which was identified and rated at the initial determination level. Considering the total medical and nonmedical evidence in the file, the claimant had mild global limitations related to mental functioning (Exhibits B5A-B6A, B9A-B10A).

Records dated August 29, 2019 show claimant had normal affect, language, and memory, was conversant and coherent. There was no delusion or abnormal thought processes. She had normal insight and judgment (Exhibit B14F, page 2).

> All of the mental impairments and treatment occurred prior to the amended onset date. Those records do not find the claimant has had any severe mental impairments (Exhibits B5A-B6A, B9A-B10A).

AR 19.

At step four, the ALJ did not incorporate any limitations related to mental impairments in the RFC. AR 21 ("The claimant can have frequent interactions with supervisors, coworkers, and members of the public and can remain on task for two hours at a time."). The ALJ explained:

> On October 17, 2018, the DDS medical consultants at the initial determination level found the claimant's mental impairments were nonsevere, as the overall objective evidence in the file indicated the combination of the claimant's impairments did not impose any severe functional work-related limitations at this time. Under the "B" criteria, the claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: a mild limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself (Exhibits B5A, B6A).
>
> . . . .
>
> On June 4, 2019, Carolyn Goodrich, Ph.D., another DDS medical consultant reviewed the medical evidence and concurred with assessment at the previous determination level (Exhibits B9A, B10A).
>
> . . . .
>
> The nonsevere mental impairments with mild B criteria are persuasive and consistent with the lack of significant treatment for mental health issues, and with the medical evidence showing the claimant's mental health was improved with medications, and anxiety was situational (Exhibits B5A, B6A, B9A, B10A).

AR 29-30.

### B.   Staleness of state-agency non-examining consultant opinions

Plaintiff argues that the ALJ erred in relying on "the opinions of state agency reviewing psychologists who were quite open about the fact they had no access to the vast majority of evidence concerning Plaintiff's psychological impairments." Doc. 19 at 10. The state-agency

reviewers were not able to obtain records related to Plaintiff's multi-week psychiatric hospitalization or the several years of treatment which came after that. AR 126 (stating at the initial consideration level, "functional evidence not received despite repeated attempts"; "She is transferred to Peak [psychiatric hospital] again (MER requested but that was not rec'd from this source)"); AR 159 (stating on reconsideration, "new mental treatment sources were identified at reconsideration level, however there was no MER received from the source listed").

Plaintiff notes that, without definitively ruling on the question, the Tenth Circuit has criticized reliance on "patently stale" opinions of state-agency psychologists as "troubling." *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012). Plaintiff candidly admits that "[d]istrict courts within the circuit have agreed with that sentiment, but have been reluctant to remand on such a basis where an ALJ meaningfully confronts the objective evidence which the reviewing doctors they rely upon were not able to consider and where a claimant 'fails to cite any evidence suggesting his mental impairments had worsened' since those psychologists reviewed the record." Doc. 19 at 10-11 (collecting cases).

Nonetheless, Plaintiff argues this case is more like *Reeder v. Colvin*, where the district court reversed, reasoning that the ALJ not only relied on a stale state-agency opinion, but also that there were new mental health diagnoses "not even mentioned by the ALJ in his decision." No. 13cv1201, 2014 WL 4538060, at *4, 6 (D. Kan. Sept. 11, 2014). Plaintiff argues that "[b]eyond her reliance on the stale opinions of the agency psychologists, the ALJ's most significant error, here, was in her own failure to fully consider the evidence which those psychologists did not have access to." Doc. 19 at 12.

Because Plaintiff acknowledges the ALJ can cure a reliance on stale state-agency opinions by the ALJ's own proper consideration of all the evidence, and because the Defendant

does not object to this framework, *see* Doc. 25 at 14, the Court turns to the part of Plaintiff's argument that involves the ALJ's duty to consider all material evidence, whether the state-agency psychologists considered it or not.

### C. Duty to consider all evidence

"The regulations require the ALJ to consider all evidence in the case record when he makes a determination or decision whether claimant is disabled." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(3)) (internal quotation marks and alterations omitted). An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

However, while "[t]he record must demonstrate that the ALJ *considered* all of the evidence," he "is not required to *discuss* every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (emphasis added). To meet her burden in this Court, Plaintiff must not only "point[] to evidence that she claims the ALJ failed to discuss," but also "say why it was significantly probative." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). The Court will not do so for a claimant. *Id.*

Plaintiff satisfies this initial burden by pointing to a variety of evidence she contends the ALJ should have discussed. Doc. 19 at 13-14. For purposes of its analysis, the Court divides Plaintiff's record citations into three categories: medical evidence related to Plaintiff's hospital stay at Peak Behavioral Health in June 2018; subjective symptom evidence; and medical evidence postdating that hospitalization.

        1.      <u>During hospitalization</u>

With respect to Plaintiff's June 2018 hospitalization, Plaintiff contends the ALJ failed to discuss:

- Mental status examinations showing "blocked thought process," confusion or "poor concentration." Doc. 19 at 13 (citing AR 2146, 2200).

- Mental status examinations showing poor insight and judgment. Doc. 19 at 13 (citing AR 2143, 2144, 2145, 2146, 2148, 2149, 2150, 2151, 2152, 2153, 2200).[4]

AR 2146 and AR 2200 document "confused" thought processes and "poor concentration" on mental status examinations conducted while Plaintiff was hospitalized at Peak Hospital on 6/19/2018 and 6/27/2018. Likewise, AR pages 2143-2153 document mental status exams nearly every day of the hospital stay, consistently reflecting that Plaintiff's insight and judgment were poor. Plaintiff is correct that the ALJ did not separately discuss the mental status examinations performed while Plaintiff was hospitalized. But the Court disagrees with Plaintiff that the failure to discuss these mental status examinations is reversable error. The ALJ recognized that Plaintiff was hospitalized at Peak Behavioral Health from June 10 through June 25, 2018 for bipolar disorder with depression, general anxiety disorder, and attention deficit disorder, and discharged with diagnoses of bipolar disorder type 2, depressed, moderate without psychotic features,

---

[4] The string cites in Plaintiff's brief supporting both of these contentions include records that post-date the hospitalization or constitute subjective symptom evidence. The Court omits those record cites here in favor of discussing them in subsequent sections related to those topics.

generalized anxiety disorder, and attention deficit disorder. AR 18-19. The ALJ clearly *considered* the hospital records. The evidence in the mental status examinations is not so probative or material that the failure to *discuss* them is reversible error, in light of the fact that the ALJ discussed and considered the entire hospital visit—a much more severe occurrence overall than the documentation of the mental status examinations during the hospitalization. The ALJ was not required to separately discuss each piece of medical evidence during the hospital stay when the ALJ clearly acknowledged the larger significance of the hospital stay.

        2.        <u>Subjective symptom evidence</u>

Plaintiff's citations to evidence she contends the ALJ failed to consider include subjective-symptom evidence.

- Mental status examinations showing "blocked thought process," confusion or "poor concentration." Doc. 19 at 13 (citing AR 1776).

Although Plaintiff characterizes it as a mental status examination performed by medical personnel, AR 1776 is a patient self-questionnaire dated 9/8/2018 from St Luke's Health Care Clinic. As such, the Court discusses it alongside Plaintiff's other argument related to subjective symptom evidence.

- Plaintiff's testimony that "she had great difficulty even getting along with her own family members or maintaining the concentration to hold a conversation." Doc. 19 at 14 (citing AR 62).

The ALJ does have a duty to consider all relevant subjective symptom evidence. *See* 20 C.F.R. §§ 404.1529(a), 416.929 ("We will consider *all* of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work." (emphasis added)). It is true that in discussing Plaintiff's subjective symptom evidence, the ALJ did not specifically refer to her inability to concentrate long enough to hold a conversation. But, the ALJ

did discuss Plaintiff's subjective symptom allegations in broad strokes. AR 21 ("The claimant's testimony is summarized as follows: . . . . It is hard to be around people. She needs help every day. . . . She takes medication for her attention deficit disorder that helps for a little bit."). This broad discussion demonstrates that the ALJ considered Plaintiff's subjective symptom allegations before concluding that Plaintiff did not have a severe mental impairment after her amended onset date. The Court will not reweigh this evidence.

### 3. Post hospitalization

The Court will first consider by topic which post-hospitalization records the ALJ discussed, and then analyze the significance of the ALJ not discussing certain records.

- Mental status examinations showing "blocked thought process," confusion or "poor concentration." Doc. 19 at 13 (citing AR 1794, 1801).

AR 1794 and AR 1801 document a mental status examination showing a "blocked" thought process at a visit dated April 2, 2020, at Amador Health Center. The ALJ discussed this encounter at length when considering Plaintiff's physical functioning, but did not specifically mention the evidence of mental functioning recorded during this visit. AR 27.

- Mental status examinations showing poor insight and judgment. Doc. 19 at 13 (citing AR 1654, 1779).

AR 1779 is a mental status examination that documents "poor insight" and "normal judgment" at St. Luke's Health Care Clinic on September 8, 2018. AR 1654 is a mental status examination documenting "poor judgment" at Amador Health Center on August 13, 2020. The ALJ did not discuss these mental status examinations.

- "[T]he report of her treating provider that Plaintiff had 'an outburst of anger today over being told she had to get labs drawn before we could continue to prescribe her medications as she requests' and she exhibited 'inappropriate mood and affect.'" Doc. 19 at 13 (citing AR 1654).

Plaintiff is incorrect; the ALJ did discuss this encounter of August 13, 2020 with Amador Health Center:

> When asked about getting labs drawn, she became angry over the phone and did not answer relevant questions and carried on a tirade about how the provider did not care about her problems (Exhibit B21F, pages 36-37). Assessment was bipolar II disorder. She had to get labs drawn before receiving medications. She stated, "not to bother with writing the refills or duplicate order for lab" (Exhibit B21F, page 40 [AR 1654]).

AR 28. Plaintiff is correct that the ALJ did not separately discuss the mental status examination showing inappropriate mood and affect, but any such discussion would have been cumulative of evidence that Plaintiff had an angry and inappropriate outburst.

- An encounter dated 8/27/2020 during which "Plaintiff complained she was 'always suicidal' and that her treating clinician acknowledged 'pt has tried a great number of meds with poor results.'" Doc. 19 at 13 (citing AR 1659).

Plaintiff is correct that the ALJ did not discuss this.

In finding that Plaintiff had no severe mental impairment, the ALJ relied on records where Plaintiff attended numerous medical appointments without any indication of abnormal mental status.[5] The ALJ failed to discuss, however, a handful of mental status examinations from

---

[5] *E.g.*, AR 19 ("Records dated August 3, 2018 show the claimant was seen at Mountain View Orthopedics and was noted as alert and oriented to time, place, and person. Her mood and affect were normal. She was active and alert"); *id.* ("Records dated August 29, 2019 show claimant had normal affect, language, and memory, was conversant and coherent. There was no delusion or abnormal thought processes. She had normal insight and judgment"); AR 22-23 ("Physical therapy notes show on August 8, 2018 . . . . [t]he claimant was cooperative and well oriented to time, place, and person. There were no mood swings or psychotic features. Her insight was good. Memory and judgment were intact."); AR 24 ("Records dated July 18, 2019 . . . show the claimant . . . . had normal affect, language, and memory, conversant and coherent. There was no delusion or abnormal thought processes."); AR 25 ("on August 29, 2019 . . . [e]xamination revealed claimant had normal affect, language, and memory, was conversant and coherent. There was no delusion or abnormal thought processes. She had normal insight and judgment."); AR 25-26 (on September 6, 2019, "[t]he claimant was cooperative with appropriate mood and affect"); AR 26-27 (on February 3, 2020, "[t]he claimant was cooperative and well oriented to time, place, and person. There were no mood swings or psychotic features. Her insight was good. Memory and judgment were intact").

13

September 8, 2018; April 2, 2020; and August 13, 2020 in which she presented with poor concentration, poor insight, and poor judgment. Valid reasons might exist to conclude this evidence is insufficient to establish that Plaintiff has a severe mental impairment: the mental status examinations were not performed in the course of seeking mental health treatment; there is no meaningful analysis of the results in any of the providers' contemporaneous notes; and thus, these records are not particularly probative. The Court, however, finds two aspects of the ALJ's treatment of these records to be significant.

First, to establish the absence of any ongoing mental health issues, the ALJ relied on evidence of normal mental status examinations taken during similar types of medical appointments. *See supra* note 5. But the abnormal mental status examinations the ALJ did not discuss contradicts the ALJ's statement that there is an absence of abnormal exams. This contradiction, in turn, undermines the ALJ's conclusion that Plaintiff had no ongoing mental abnormalities. That is, more concerning than what these undiscussed records demonstrate about Plaintiff's mental health when viewed in isolation, is that these records undercut the premise on which the ALJ based her conclusion that Plaintiff's mental health issues had resolved.

Second, the undiscussed records contradict the ALJ's contention that "[a]ll of the mental impairments and treatment occurred prior to the amended onset date" of June 30, 2019. AR 19. Obviously, Plaintiff's mental impairments records in April and August 2020, that the ALJ did not discuss, occurred after the June 2019 amended onset date. Most problematically, the ALJ failed to acknowledge that Plaintiff sought mental health treatment for suicidal ideation in August 2020. AR 1659 (describing "chief complaint" during clinical visit as suicidal ideation and that medications had not worked and noting Plaintiff's description of herself as "always suicidal"). Rather than acknowledging evidence of an ongoing issue with suicidal ideation, the

ALJ asserted that Plaintiff had no instances of suicidal ideation after June 2018. AR 19 (stating that, as of June 2018, "Her mood stabilized and there were [sic] no further suicidal or homicidal ideation").

The finding of a severe impairment at step two is a low threshold. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (step two requires only "a 'de minimis' showing of impairment"). That said, it may be that the evidence of record falls short of establishing a severe impairment. The Court is not reviewing the record de novo to opine about what conclusion the ALJ should or should not have made regarding whether Plaintiff suffers from a severe mental impairment after her amended onset date. Instead, the Court is concerned that the premise for the ALJ's conclusion that Plaintiff has no severe mental impairment is an incorrect one: that almost no records evidencing such an impairment existed after her June 2018 hospitalization. Because evidence on the record contradicts the premise of the ALJ's conclusion, the Court must remand this case so that the ALJ may incorporate the evidence she did not consider, and that tends to contradict her premise, into her analysis.

The Court does not address Plaintiff's remaining arguments, given that it remands for a reevaluation of the evidence pertaining to her mental health limitations. *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (declining to reach the claimant's remaining allegations of error, as they may be affected by the analysis on remand).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion For Summary Judgment (Doc. 18) is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

15